**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALBERT VAN BILDERBEEK,**
**HENDRIK VAN BILDERBEEK,**

                              **Plaintiffs,**

**-vs-**                                                   **Case No. 6:08-cv-1931-Orl-28GJK**

**UNITED STATES DEPARTMENT OF**
**JUSTICE,**

                              **Defendant.**

_____

# ORDER

Pursuant to the Freedom of Information Act ("the FOIA"), Plaintiffs Albert Van Bilderbeek and Hendrik Van Bilderbeek ("the Van Bilderbeeks" or "Plaintiffs") brought suit against Defendant, U.S. Department of Justice ("the Department"), alleging that the Drug Enforcement Administration ("DEA") violated the FOIA by both failing to timely respond to and refusing to grant Plaintiffs' request for "all documents relating to the DEA investigation of Plaintiffs and Llanos Oil Exploration Limited." (Compl. ¶¶ 7-11). This cause is before the Court on the "Motion to Dismiss or, Alternatively, Motion for Summary Judgment" (Doc. 20) filed by the Department and the "Cross Motion for Summary Judgment and Response to Defendant's Motion for Summary Judgment" (Doc. 24) filed by Plaintiffs. Upon consideration of the filings and the responses thereto, the Court determines that the Department's motion for summary judgment possesses merit and must be granted and the cross motion must be denied.

## I. Background

In a letter dated August 21, 2008, Plaintiffs—through their legal counsel, Harrison T. Slaughter, Jr. of Leventhal & Slaughter, P.A.—requested all documents regarding an alleged joint investigation of themselves and their company—Llanos Oil Exploration Limited ("Llanos")—by the DEA and the Colombian Departamento Administrativo de Seguridad/Special Investigations Unit ("DAS/SIU").[1] (First FOIA Request, Ex. A to Doc. 20). The letter detailed a list of 148 points intended for the Department to use "in its efforts to locate the requested documents," including, among other things, requests for information on third parties, records regarding alleged informants, and the names of DEA agents attending the 2004 arrest of Henrik Van Bilderbeek and others. (See id. at 2-15). The DEA acknowledged receipt of Plaintiffs' request by letter on September 30, 2008 and informed Plaintiffs that their request would be "handled in chronological order based on the date of this letter." (Ex. B to Doc. 20). On October 3, 2008, Plaintiffs amended their FOIA request to include seven additional records. (Second FOIA Request, Ex. C to Doc. 20). Plaintiffs then filed their Complaint with this Court on November 13, 2008 alleging that the DEA failed to provide the requested records in compliance with their combined FOIA requests. (Compl., Doc. 1).

The DEA responded to Plaintiffs' FOIA requests via letter dated November 17, 2008 and informed Plaintiffs that their requests had been assigned DEA case number 08-1361-P.

---

[1] Plaintiffs allege that in October 2002, the Bogota, Colombia office of the DEA began an investigation of Llanos and the Van Bilderbeeks in conjunction with DAS/SIU. (August 2008 FOIA Request, at 1).

(November 17, 2008 Letter, Ex. D to Doc. 20). The DEA then proceeded to detail a number of deficiencies that prohibited a search of its Investigative Reporting and Filing System ("IRFS") for information related to the items specified in the Van Bilderbeeks' FOIA request. (Id. at 1-2). Regarding Plaintiffs and Llanos, the DEA stated that it would be unable to positively identify records without additional information such as complete names, addresses, and social security numbers for the Van Bilderbeeks and a specific address and location for Llanos. (Id. at 2). The DEA also requested that the Van Bilderbeeks provide third-party release statements authorizing the DEA to release any information regarding the Van Bilderbeeks to their legal counsel. (Id.). Additionally, though neither confirming nor denying the existence of any records regarding third parties, the DEA requested that Plaintiffs provide either proof of death or an original notarized waiver of the third parties about whom information was requested. (Id.). Finally, the DEA advised Plaintiffs that the DAS/SIU was a separate entity and that Plaintiffs must contact DAS/SIU directly for any records maintained in its custody. (Id.).

In a letter dated March 11, 2009, Plaintiffs provided the required releases enabling the DEA to release information pertaining to them to their legal counsel. (Ex. A to Doc. 24). Additionally, Plaintiffs provided a third-party release authorization executed by Elena Lowen ("Lowen")—a third party whom the Van Bilderbeeks had listed in their request. (Id.). The DEA acknowledged receipt of these authorizations via a March 30, 2009 letter and confirmed that the DEA was beginning a records query in search of files responsive to the initial FOIA

requests.[2] (Ex. E to Doc. 20). In the records search, the DEA queried the Narcotics and Dangerous Drug Information System ("NADDIS") and located seven investigative case files pertaining to the Van Bilderbeeks.[3] Specifically, the DEA found one "subject" file and six "related" files for Albert Van Bilderbeek and one "related" file for Hendrik Van Bilderbeek that was common to one of the six related files for Albert.[4] (Id.). The DEA informed Plaintiffs that the estimated fee to search these seven files was $672.00 and that upon receipt of this amount, the DEA would "initiate further processing" of the Plaintiffs' requests. (Id. at 2-3).

After receiving the required fees, the DEA conducted a document-by-document review of the seven investigative files identified from the NADDIS query and released two documents in full—a November 17, 2004 letter from Plaintiffs' counsel regarding the purported legitimate status of Llanos sent to various government and private persons and forty supporting exhibits attached with that letter—a total of 418 pages. (Ex. F to Doc. 20;

---

[2] Because Plaintiffs had not provided the additional information regarding Llanos (namely, the company's address and location) requested in the DEA's November 17, 2008 letter, no further action had been taken regarding the Plaintiffs' request for information of any alleged DEA investigation of Llanos. (Ex. E to Doc. 20, at 2).

[3] The March 30, 2009 letter states that the DEA searched NADDIS "for investigative files pertaining to Albert and Hendrik Van Bilderbeek." (Ex. E to Doc. 20, at 2). It is unclear to the Court whether any search was conducted regarding investigative files relating to Lowen.

[4] A "subject file" is "an investigative file in which there usually exists a DEA Personal History Report and/or a DEA Disposition Report for an individual identified as the file title or subject of the investigation." (Ex. E to Doc. 20, at 2). A "related file" is "an investigative case file in which the individual may merely be mentioned, but there is no personal history or disposition report and the individual is not the file title or subject of the investigation." (Id.).

Seidel Decl. ¶ 47).  The DEA determined that the information contained within these documents "would not reasonably interfere with any prospective enforcement proceeding." (Ex. F to Doc. 20).  However, with the exception of these documents, the DEA determined that no other records could be released pursuant to 5 U.S.C. § 552(b)(7)(A) because "agents in the field [confirm that] investigations relating to your clients, [Llanos], and others is ongoing; therefore, the release of these documents can be expected to interfere with prospective enforcement proceedings."  In response to the FOIA request regarding third parties for whom no releases or proof of death had been provided, confidential sources, DEA agents, and law enforcement and government officials, the DEA gave a Glomar response[5] and asserted a host of other FOIA exemptions under § 552(b).[6] (Id.).

## II.  Standard of Review

"'Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified.'" Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting Miscavige v. I.R.S., 2 F.3d 366, 369 (11th Cir. 1993)); see also Cappabianca v. Comm'r, U.S. Customs Serv., 847 F. Supp 1558, 1562 (M.D. Fla. 1994) ("[O]nce documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment.").  "Summary judgment is appropriate

---

[5]A Glomar response—originating from a FOIA request for information pertaining to a submarine-retrieval ship known as the Glomar Explorer—neither confirms nor denies the existence of records relating to the FOIA request.  See Phillippi v. Cent. Intelligence Agency, 546 F.2d 1009, 1012 (D.C. Cir. 1976).

[6]Specifically, the DEA claims that the record information is protected from Plaintiffs' FOIA requests under §§ 552(b)(2), (3), (5), (6), (7)(C), (7)(D), (7)(E), and (7)(F).  (Ex. F to Doc. 20).

if the pleadings, depositions, admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miccosukee, 516 F.3d at 1243.

In the instant case, there is no dispute as to the adequacy of the search or the documents at issue being properly identified. Upon receipt of the proper releases, the DEA conducted a search of NADDIS and a document-by-document review of the seven investigative files identified therein. After such a review, the DEA released some records concerning the Van Bilderbeeks and Lowen, withheld others, and refused to either confirm or deny the existence of records relating to third parties for whom authorizations of release had not been provided. (Seidel Decl. ¶¶ 16, 20). Accordingly, summary judgment is a proper manner in which to dispose of this matter.

### III. Analysis

"The purpose of [the] FOIA is to encourage public disclosure of information so citizens may understand what their government is doing." Office of the Capital Collateral Counsel, N. Region of Fla. v. U.S. Dep't of Justice, 331 F.3d 799, 802 (11th Cir. 2003). "FOIA requires government agencies to disclose to the public any requested documents." Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1276 (11th Cir. 2004). However, an "agency may avoid disclosure only if it proves that the documents fall within one of nine statutory exemptions." Id. at 1276-77. "The government bears the burden of proving that a requested document is exempted." Id. at 1277. This burden of proof can be established by affidavit testimony so long as the affidavit "provide[s] as accurate a basis for decision as would sanitized indexing, random or representative

sampling, in camera review, or oral testimony." Miscavige, 2 F.3d at 368.

### A. Documents withheld pursuant to § 552(b)(7)(A)

The DEA has maintained that it withheld records pertaining to the Van Bilderbeeks, Llanos, and Lowen because these records were exempt from disclosure under § 552(b)(7)(A). Section 552(b)(7)(A) allows government agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). As an agency specializing in law enforcement, the DEA's "decision to invoke exemption 7 is entitled to deference." Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 32 (D.C. Cir. 1998).

#### I. Law Enforcement Purpose

After identifying seven investigative files relating to the Van Bilderbeeks, Llanos, and Lowen and responsive to the FOIA request, Michael G. Seidel ("Seidel"), a Senior Attorney for the Department, questioned the lead DEA agent as to whether these files were part of an ongoing investigation or prospective enforcement proceeding. (Seidel Dec. ¶ 31). Seidel was advised that the responsive documents "were compiled during domestic and foreign criminal law enforcement investigations by [the] DEA" under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., were "associated with drug trafficking and money laundering of illegal drug trafficking proceeds," and related to an ongoing investigation or prospective enforcement proceeding against the Van Bilderbeeks, Llanos, and other third parties. (Id. ¶¶ 31, 33). The Van Bilderbeeks argue that the DEA's investigation "is not being legitimately conducted by [the] DEA in the context of its official

duties" and accordingly cannot be an investigation conducted for a law enforcement purpose. (Doc. 24 at 18). Specifically, Plaintiffs contend that "the DEA has either been duped by, or willfully conspired with, Colombian government officials to manufacture a criminal 'investigation' against Plaintiffs and Llanos . . . in order to deprive them of valuable oil rights granted to Llanos decades ago." (Id. at 8).

"To establish a law enforcement purpose, [an agency's] declarations must establish (1) 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and (2) 'a connection between an individual or incident and a possible security risk or violation of federal law.'" Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003) (quoting Campbell, 164 F.3d at 32). The Eleventh Circuit has stated that "[c]ourts should be hesitant to reexamine a law enforcement agency's decision to investigate if there is a plausible basis for the agency's decision." Arenberg v. Drug Enforcement Agency, 849 F.2d 579, 581 (11th Cir. 1988).

Despite the Van Bilderbeeks protestations that the DEA has been "duped" into investigating their purported criminal activity, the Court concludes that a plausible basis existed for the agency's decision to investigate. In their response to the Department's motion for summary judgement, Plaintiffs themselves state that "Colombian officials, through the DAS, falsely implicate[d] Hendrick and Llanos . . . in an international drug and money laundering organization." (Doc. 24 at 7). In light of Plaintiffs' own statement that Colombian government officials implicated them in violations of federal law, a plausible basis for the

DEA's decision to investigate Plaintiffs and their company existed.[7] Accordingly, the records were compiled for law enforcement purposes.

### ii. Interference with Law Enforcement Proceedings

However, documents may not be withheld under § 552(b)(7)(A) simply because they are related to a law enforcement purpose. In addition to showing that information was compiled for a law enforcement purpose, "the government must show that disclosure of those documents would, in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding." North v. Walsh, 881 F.2d 1088, 1097 (D.C. Cir. 1989). "[A]n agency seeking to shield records or information behind exemption 7(A) must show that disclosure could reasonably be expected perceptibly to interfere with an enforcement proceeding." Id. The agency "need not establish that release of a *particular* document would *actually* interfere with an enforcement proceeding." Solar Sources, Inc. v. U.S., 142 F.3d 1033, 1037 (7th Cir. 1998) (first emphasis added). "Rather, the [agency] need show only that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings." Id. at 1037-38 (internal quotations omitted). "It is accordingly well-established that [an agency] may justify its withholdings by reference to generic categories of documents, rather than document-by-document." Id. at 1038. "The agency need only provide sufficient information to allow a court to review the agency's claimed

---

[7]The Court takes note that Hendrick Van Bilderbeek was convicted by a Colombian court in September 2008 for money laundering and was sentenced to twenty years in prison. (Doc. 24 at 8).

-9-

exemption." Wright v. Occupation Safety & Health Admin., 822 F.2d 642, 646 (7th Cir. 1987).

In Bevis v. Department of State, 801 F.2d 1386 (D.C. Cir. 1986), the D.C. Circuit stated that in order to use a categorical approach when withholding records, an agency must define the categories to be used, conduct a document-by-document review before assigning documents to the appropriate category, and "explain to the court how the release of each category would interfere with enforcement proceedings." Id. at 1389-90. In the instant case, the Department defines the three categories of records—Investigative, Administrative, and Publicly Known—and their component subcategories, states that each document responsive to the FOIA request was reviewed and placed in its appropriate category or subcategory, and explains to the Court with adequate information how the release of each category of documents would interfere with enforcement proceedings. (Seidel Dec. ¶¶ 39-46). Accordingly, the Department properly withheld records under § 552(b)(7)(A) while the investigation was ongoing because the release of such records could reasonably be expected to interfere with law enforcement proceedings.

### iii. Reasonably Segregable

Section 552(b) requires disclosure of any "reasonably segregable" information after redaction of the exempt information. However, otherwise disclosable information that is "inextricably intertwined with exempt portions" is not considered reasonably segregable. Mead Data Ctr. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability. However, the agency is not required

to provide so much detail that the exempt material would be effectively disclosed." <u>Johnson v. Executive Office for U.S. Attorneys</u>, 310 F.3d 771, 776 (D.C. Cir. 2002) (citations omitted). In <u>Johnson</u>, the court held that a combination of a <u>Vaughn</u> index and an affidavit explaining that the withheld documents contained no releasable information that could be reasonably segregated from the nonreleasable portions was "sufficient to fulfill the agency's obligations to show with 'reasonable specificity' why a document cannot be further segregated." <u>Id.</u> Here, the Department has provided the Court with detailed categories of documents withheld and an affidavit stating that with the exception of the two documents contained within the Publically Known category, "no additional reasonably segregable portion of any document or evidentiary material . . . can [be] released at this time without jeopardizing the ongoing investigation or hindering future enforcement proceedings." (Seidel Dec. ¶ 48). The Court therefore finds that the Department has explained with reasonable specificity why the records at issue cannot be further segregated.

### B. Documents withheld pursuant to § 552(b)(6) and § 552(b)(7)(C)

The Department contends that because the Van Bilderbeeks have not provided any third-party releases other than for Lowen, any proofs of death, or any court orders directing such a release, and because no routine use exists for the requested records, it properly responded to the Van Bilderbeeks' FOIA request with a Glomar response, neither confirming nor denying the existence of records responsive to the request. Specifically, the Department claims that its Glomar response is proper because "disclosing the existence or nonexistence of records concerning third parties other than . . . Lowen would result in the unwarranted invasion of privacy of those third parties within the meaning of § 552(b)(6), and could

-11-

reasonably be expected to cause harm within the meaning of § 552(b)(7)(C)."  (Doc. 20 at 14).

Exemption 6 of the FOIA protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This exemption covers all information applying to a "particular individual."  U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982).  Exemption 7(C), however, protects from disclosure a broader range of records, those compiled for a law enforcement purpose to the extent a disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[8]  5 U.S.C. § 552(b)(7)(C).  Both Exemption 6 and Exemption 7(C) require a balancing of the privacy interests of the individuals in not having the records disclosed against the asserted public interest in disclosure.  However, because the Court finds that the Department meets the "reasonably be expected to constitute an unwarranted invasion of personal privacy" standard of Exemption 7(C), it need not address the more stringent "clearly unwarranted" standard of Exemption 6.

The Van Bilderbeeks seek information about third parties—including alleged informants, confidential sources, and DEA agents—involved in 2004 arrest of Hendrik Van Bilderbeek and others.  Numerous courts, however, have held that the disclosure of information relating to an individual's involvement in law enforcement proceedings constitutes an unwarranted invasion of personal privacy under Exemption 7(C).  Schrecker

---

[8]The Court has previously found that the records at issue were compiled for a law enforcement purpose.

v. U.S. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003); Fitzgibbon v. Cent. Intelligence Agency, 911 F.2d 755, 767-68 (D.C. Cir. 1990); Barbosa v. Drug Enforcement Agency, 541 F. Supp. 2d 108, 111 (D.D.C. 2008). Other than vague assertions of an improper investigation,[9] the Plaintiffs have articulated no genuine public interest in the release of the records at issue. Accordingly, the Court finds that the Department properly issued a Glomar response pursuant to Exemption 7(C).[10]

### IV. Conclusion

In accordance with the foregoing discussion, it is hereby **ORDERED** as followed:

1. The Department's "Motion to Dismiss or, Alternatively, Motion for Summary Judgment" (Doc. 20) is **GRANTED**.

2. Plaintiffs' "Cross Motion for Summary Judgment and Response to Defendant's

---

[9]In their Response, Plaintiffs include a section entitled "The Public Interest in Knowing Whether the Federal Government Assisted the Colombian Government in Investigating and Prosecuting Persons in Order to Deprive Them of Property Rights Outweighs Privacy Interests." (Doc. 24 at 22). However, in the text following this heading, Plaintiffs present no public interest or support for their position. (See id. at 22-23). Presumably, this is in relation to Plaintiffs' assertion that the DEA had been "duped" into investigating Plaintiffs and their company based upon the declaration of Rafael Enrique Garcia Torres made from his prison cell in Colombia in which Garcia Torres alleges that Mr. Noguera Cotes, the President of Colombia, ordered a sham investigation of Llanos. (See Ex. E to Doc. 24).

[10]Even if this Court found that Plaintiffs raised a genuine public interest regarding the DEA's investigation, it must still find in favor of the Department. The U.S. Supreme Court has held that "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004). "Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id. Based on the evidence presented here, a reasonable person could not have found that the DEA acted improperly.

Motion for Summary Judgment" (Doc. 24) is **DENIED**.

3. The Clerk is hereby directed to enter judgment in favor of the Department and thereafter close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 22nd day of March, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party